IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HOWARD JOSEPH WARNS,

    Petitioner,

    v.

P. BARKER, Warden,

    Respondent.
_____/

No. C 04-5074 SI (pr)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Howard Joseph Warns, an inmate at the Correctional Training Facility in Soledad, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 concerning his 2000 conviction in the Marin County Superior Court. For the reasons discussed below, the petition is denied on the merits.

## BACKGROUND

A.   <u>The Crimes</u>

This habeas petition arises from Warns' conviction on a guilty plea in Marin County Superior Court. The crimes were described in the California Court of Appeal's opinion:

> On May 15, 1998, [Warns] entered into a motel in Novato. He approached the desk clerk, pointed a handgun with a laser sight at him, and demanded money. The clerk saw the red dot of the laser on his chest. He gave [Warns] $179. [Warns] fled.

1

> On May 19, 1998, [Warns] entered a motel in Corte Madera wearing a mask. He pointed a handgun with a laser sight at the desk clerk and demanded money. The clerk fell to his knees and begged appellant not to shoot him. The clerk noticed the red dot of the laser shining in his face. [Warns] told the clerk, "[w]here the light goes, the bullet goes!" The clerk gave [Warns] $535. [Warns] fled.
>
> On May 30, 1998, [Warns] telephoned the cashier of a restaurant in Novato. Claiming he was an undercover police officer, [Warns] asked the cashier to meet him in the lobby. The cashier went to the lobby. [Warns] gave him a tape player with headphones and asked him to listen to the tape. The cashier tried, but could not understand what was on the tape. Frustrated, [Warns] pointed a handgun with a laser sight at the cashier and demanded money. The cashier was afraid [Warns] might kill him because he could see the red dot on his chest. Accordingly, the cashier retrieved $675.65 from his register and gave it to [Warns]. [Warns] fled.
>
> . . .
>
> A search of appellant's trunk uncovered a BB gun with a laser sight on it. [Warns] confessed to the robberies above and to four similar robberies he had committed in Napa and Sonoma Counties.

Resp. Exh. 3, Cal. Ct. App. Opinion, pp. 1-3 (sixth bracketed material in original).

B.      Case History

Warns was charged with three counts of robbery. The information alleged that Warns had three prior strike convictions under the Three Strikes Law, and three prior serious felony convictions. See Cal. Penal Code §§ 667, 1170.12. Warns pled guilty to one count of robbery, admitted the three strike allegations, and admitted one of the prior serious felony allegations. During sentencing, Warns asked the court to use its discretion to strike the prior strike convictions and allow him to enter into a drug treatment program. The trial court declined. The court sentenced Warns to 25 years to life, plus 5 years for the prior serious felony, for a total term of 30 years to life. After unsuccessful direct appeals and habeas corpus petitions in state court, Warns filed his federal habeas corpus petition pro se. The petition raises four ineffective assistance of counsel claims.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred within this judicial district, in Marin County, California. 28 U.S.C. §§ 84, 2241(d).

**EXHAUSTION**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required to first exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b),(c). State judicial remedies have been exhausted for claims raised in this petition.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

**DISCUSSION**

Warns raises four ineffective assistance of counsel claims in his petition. Warns asserts that he received ineffective assistance of trial counsel when: 1) counsel failed to investigate an

3

ex parte communication between the trial court and a drug treatment counselor, 2) counsel failed to challenge the denial of a habeas petition concerning a prior conviction, and 3) counsel erroneously advised Warns that he could appeal the denial of a habeas corpus petition for a prior conviction.  In his fourth claim, Warns asserts that <u>appellate</u> counsel was ineffective in failing to pursue meritorious claims on appeal.

A.     <u>Ineffective Assistance of Counsel</u>

The Sixth Amendment guarantees not just counsel, but the effective assistance of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  The purpose of the right is to ensure a fair trial, and the benchmark for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."  <u>See id.</u>  In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish (1) that counsel's performance fell below an "objective standard of reasonableness," and (2) that he was prejudiced by counsel's deficient performance.  <u>Id.</u> at 687-88, 694.  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  <u>See id.</u> at 689.

A defendant who enters a guilty plea on the advice of counsel may generally only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 56 (1985); <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973). The defendant must satisfy the two-part standard of <u>Strickland</u>, 466 U.S. 668, 687 (1984), i.e., that counsel's performance was deficient and that the deficient performance prejudiced his defense.  In the guilty plea context, the defendant establishes prejudice by showing that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. at 57-59; <u>Iaea v. Sunn</u>, 800 F.2d 861, 864-65 (9th Cir. 1986).

4

With these standards in mind, the court turns to Warns' specific claims of ineffectiveness of trial counsel. The first and second of Warns' claims concern post-guilty plea problems so the Hill v. Lockhart standard cannot be meaningfully applied to them. The third claims concerns a guilty plea advisement problem and therefore is covered by the Hill v. Lockhart standard.

### 1. Counsel's Failure to Investigate Ex Parte Communication

During the sentencing hearing, a drug treatment counselor at the Marin County Jail mentioned that Warns had been asked to leave the jail's drug treatment program because he became romantically involved with one of the counselors. The judge said he was aware of this fact, thus suggesting to Warns that the judge had received the information in an earlier ex parte communication.[1] The judge then stated that Warns' removal from the program did not affect his analysis. "I think I've expressed to you all before that that incident doesn't really weigh in this process as far as I am concerned. It's an explanation of his absence from the program...but I think I've already told Mr. Martinez and the DA I'm not prepared to hold that against him." 7/7/00 RT 12. Indeed, the judge expressed his view that romantic relationships were inevitable under the circumstances unless the person in the position of authority–here, the woman–took some responsibility to avoid the development of a relationship.

The Marin County Superior Court later rejected Warns' claim that his attorney had engaged in ineffective assistance of counsel by failing to move to disqualify the judge. "Assuming, arguendo, that such communications were improper, they were fully disclosed to both sides by the trial judge, who stated that his judgment was entirely unaffected by them. The trial judge did all the law requires him to do in this regard. Had a motion to disqualify been

---

[1] Additionally, this court will accept the state habeas court's implicit determination that an ex parte communication occurred, but notes that it is not clear from the record that any ex parte communication actually had occurred. Despite Warns' suggestion to the contrary, the judge did not state he had a communication with the drug treatment counselor or with the treatment program supervisor. Also, the judge stated that he previously had told at least the defense attorney and prosecutor that he was aware of the information. 7/7/00 RT 12 ("I think I've already told Mr. Martinez and the DA. . . .") The court need not develop the record on how the court came to know the information as Warns' claim is meritless even assuming that an ex parte communication occurred.

5

made, it would have been summarily denied." Respondent's Exh. 12, at unnumbered appendix (Oct. 28, 2002 Order Denying Petition, p. 2 (footnotes and internal citations omitted)).

The threshold problem with Warns' claim is the absence of Supreme Court precedent on point. The Supreme Court has not decided what standard should apply to counsel's performance in non-capital sentencing proceedings. Cooper-Smith v. Palmateer, 397 F.3d 1236, 1244 (9th Cir. 2005). Strickland declined to "'consider the role of counsel in an ordinary sentencing, which . . . may require a different approach to the definition of constitutionally effective assistance'" and no later Supreme Court decision has done so, either. Id. (quoting Strickland, 466 U.S. at 686). Without clearly established Supreme Court precedent, the state court's decision cannot be said to be contrary to or an unreasonable application of it.

Even if the Strickland standard applied at the sentencing phase, Warns would not prevail on his claim. Under Strickland, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 491) (internal quotations omitted). Counsel has no duty to make a meritless motion. See Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996). It was not objectively unreasonable for Warns' trial counsel to not pursue whether an ex parte communication had occurred because it would have made no difference. Since the judge had disclosed the fact that he knew of the reason for Warns' dismissal from the program, counsel could not have successfully moved to disqualify the judge because, as the Marin County Superior Court found, the judge had complied with California law. The Marin County Superior Court was following People v. Shaw, 210 Cal. App. 3d 859, which had explained that the California Supreme Court,

> has implicitly recognized that sentencing judges will sometimes receive communications relative to a sentencing outside of the statutorily prescribed procedures. The sentencing court then may [] disregard the communications, as sanctioned by Lichens . . . We have every confidence that trial judges will be able to disregard improper communications and will consider only relevant matters at sentencing, within the context of the requirements of due process and a proper adversary procedure in which all parties will have notice of any communication the court is inclined to consider . . . [¶] However, if such a communication is received by the judge, he should announce on the record its receipt to all parties prior to sentencing. If he intends to wholly disregard such communication he

6

should so state on the record.

Id. at 867. In these circumstances, commencing an investigation to file a motion to disqualify or actually filing a motion to disqualify would have been futile because the judge disclosed the communication before he sentenced Warns and announced it would not affect his decision. There was no deficient performance.

The prejudice prong of the Strickland test also is not satisfied for this claim. Reading the transcript of the sentencing proceeding leads to the unavoidable conclusion that Warns' early exit from the drug treatment program and relationship with the counselor made absolutely no difference to the sentence. The judge's real concern was Warns' repetitive criminal behavior and not the fact that he had broken the rules of a drug treatment program:

> As I mentioned to somebody else earlier today, one of the things I'm confronted with in this case is repeated separate instances of armed robbery, and that's not the usual kind of situation I'm looking at when I'm talking about sending somebody off to Delancy Street or some other program.
>
> . . . We have the confidence of society in the judicial process dealing with things as a matter of scale, and so all of those things play into it; and when you get a person who has been on parole for robbery and has a prior conviction for robbery and armed robbery, and then gets arrested for three new instances, even though he confesses and pleads guilty and cooperates in Pod C, he starts to be smaller as a factor in consideration for the court.

7/7/00 RT at 26; see also id. at 15, 21, 25, 27, 38, 44, 46. Warns received a typical sentence for a having three strikes and a prior serious felony. See Cal. Penal Code §§ 1170.12, 667(a)(1). Although the judge had been favorably impressed by Warns' recent effort to turn his life around in the jail's program, no amount of substance abuse programming Warns could have done would have made any difference to the judge in light of Warns' criminal history. The judge's rejection of Warns' efforts to have one or more prior convictions dismissed to reduce his sentence was echoed by the California Court of Appeal in its rejection of Warns' claim that the judge abused his discretion when it declined to dismiss Warns' priors. See Cal. Ct. App. Opinion, pp. 3-7.

Warns attempted to shift or increase the scope of his first claim in a supplemental brief he filed on December 20, 2004, in which he urged that the sexual harassment by his drug program counselor and a supervisor reporting of that problem to the court violated his right to due process. These arguments have no merit. The alleged sexual harassment by the counselor

simply had nothing to do with Warns' pending criminal case, let alone amount to a due process violation in that criminal case. As discussed above, the sentencing hearing transcript makes it abundantly clear that it was Warns' criminal history and current crimes that led to the rejection of his motion to dismiss the priors. His relationship with a counselor and removal from the drug treatment program simply didn't affect the decision. The court need not await exhaustion and instead may deny relief on the new due process claim because it is "perfectly clear" that the supplemental brief "does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005).

### 2. Failure to Challenge Denial of Habeas Corpus Petition Regarding the El Dorado Conviction

Warns contends that his attorney for his current conviction in 2000 in Marin County (the "Marin" conviction) was ineffective for failing to collaterally challenge a 1993 conviction in El Dorado County (the "El Dorado" conviction) on the ground that he received ineffective assistance of counsel for that plea. Analysis of the claim requires an examination of the El Dorado plea proceedings to see whether the attorney for the Marin conviction should have challenged it.

#### a. The El Dorado Conviction

In 1993, Warns was charged in El Dorado County Superior Court with two counts of robbery and use of a firearm during the robbery. Pursuant to a plea bargain, Warns pled guilty to one count of robbery and admitted personal use of a firearm. He received a six-year prison sentence. That sentence that did not exceed the agreed-upon maximum.

In the El Dorado proceedings, Warns was represented by Suzanne Kingsbury. Warns alleged that Kingsbury led him to believe that probation was a possible sentence when probation was not possible under California law. At the sentencing hearing, Kingsbury acknowledged that Warns was not eligible for probation in light of the admission of the firearm enhancement allegation but urged the court to exercise discretion to dismiss the allegation under California

Penal Code § 1385 so that probation could be granted and Warns could get into a drug treatment program. The prosecutor argued that the firearm enhancement could not be dismissed and was a complete bar to probation. The El Dorado judge did not determine that he lacked authority to dismiss the firearm enhancement allegation, but instead was more concerned that if he did dismiss it, it could not be reinstated as had been proposed by Kingsbury. This seemed to be the primary concern of the court in declining to dismiss the firearm enhancement.[2] Exh. 19, 7/2/93 RT 4. The El Dorado judge postponed sentencing so Warns would have time to deal with other charges pending against him in Sonoma County (for violating probation) and Sacramento County (for robbery).

Warns did not appeal his El Dorado conviction. He waited six years to file a habeas petition in state court in which he claimed he received ineffective assistance of counsel in the El Dorado plea proceedings. Exh. 14. The habeas petition was rejected on procedural grounds and on the merits. Exh. 15.

The El Dorado County Superior Court's 1999 denial of Warns' habeas petition was not appealed. Warns contends that his counsel for the Marin conviction in 2000 was ineffective for telling him he could continue his challenge to the El Dorado prior conviction and for failing to mount such a challenge. Although not appealed, the El Dorado prior conviction was revisited in the context of the Marin conviction.

Warns filed a petition for writ of error coram nobis in Marin County Superior Court in which he contended his Marin plea was based on bad advice by his Marin attorney that he could continue to challenge the El Dorado conviction in appeals court. Exh. 10. The Marin County Superior Court held a hearing on the petition and reached a reasoned decision. See Exh. 11 (hearing transcript); Exh. 20 (defense attorney Martinez's declaration). The court concluded that

---

[2] The improbability that the El Dorado judge would have been inclined to dismiss the firearm enhancement even if he had the power to do so is reflected by his reaction to the description of the crime. After hearing that the crime was a motel robbery in which Warns allegedly had a "sawed off shotgun rigged in a sling to carry under his coat," the judge commented that there was "no question" that the El Dorado crime was "premeditated and planned with some skill." Exh. 19, 7/2/93 RT at 7-8. And after it was mentioned that Warns had served a jail sentence on an earlier conviction in Solano County involving a BB gun, the judge noted that Warns had failed to take advantage of a break and instead continued on with his criminal conduct. Id. at 9.

1   it was far too great a reach to believe that if the El Dorado conviction had been set aside, the
2   Marin judge would have exercised discretion and struck another prior conviction so as to make
3   the current offense a second, rather than a third strike. Id. at 15-16. The Marin court further
4   determined that El Dorado counsel had informed Warns that the § 1203.06 allegation to which
5   he admitted was an allegation that precluded probation. Id. at 16. The Marin court determined
6   that the El Dorado conviction was lawfully obtained and the plea was made knowingly by
7   Warns; therefore, there was no ineffective assistance of counsel in the El Dorado proceedings.
8   Id. The Marin court further determined that the Marin attorney did not render ineffective
9   assistance of counsel:  there was no deficient performance or prejudice. Id. at 17.

b.     Strickland Analysis Regarding the El Dorado Conviction

If Kingsbury advised Warns that the judge had the power to strike the firearm enhancement and grant probation, her advice was deficient. Kingsbury's contention that the court had the power, under California Penal Code § 1385, to strike the firearm enhancement and grant probation was without merit under People v. Tanner. 24 Cal. 3d 514, 520-21 (1979) (holding that judges have no discretion under § 1385 to strike a properly found § 1203.06 allegation).

However, even if Warns was given this advice before the hearing, Warns was alerted in court that the enhancement made him ineligible for probation and he had the opportunity to ask the judge for clarification before he was sentenced. Indeed, Warns admitted to the firearm enhancement shortly after Mrs. Kingsbury said it was a "no probation" allegation.[3] Additionally,

---

[3]The following colloquy took place at the May 28, 2003 plea hearing:

> MRS. KINGSBURY: 1203.06 is no probation allegation.
>
> MR. COX: It has to be pled also.
>
> THE COURT: Let me ask again. To the enhancement of the personal use of a firearm in this case, I guess a shotgun, pursuant to – maybe it makes more sense to say Penal Code Section 12022.5(a) and Section 1203.06(a)(1), do you admit or deny use?
>
> THE DEFENDANT: Admit

Warns was given the opportunity to ask for clarification or explanation during the plea hearing but he did not.[4]

He also is unable to show prejudice because he received significant benefits from his El Dorado plea agreement. See United States v. Baramdyka, 95 F.3d 840, 845-47 (9th Cir. 1996) (counsel's failure to assert viable defense to charge that results in probation does not prejudice defendant when conviction on another, more serious charge is valid and other, valid charges are dismissed). A mere inaccurate prediction regarding the potential sentence is insufficient to establish ineffective assistance; petitioner must establish a "'gross mischaracterization of the likely outcome' of a plea bargain 'combined with . . . erroneous advice on the probable effects of going to trial.'" Sophanthavong v. Palmateer, 378 F.3d 859, 868 (9th Cir. 2004) (citing United States v. Keller, 902 F.2d 1391, 1394 (9th Cir. 1990)). Warns received a significant benefit in the El Dorado plea bargain: the district attorney dismissed a second count of robbery and Warns received a 6-year sentence instead of the 11-year sentence he could have received had he gone to trial and been convicted of all charges. No prejudice resulted from Kingsbury's incorrect prediction of the possible low end of the range of punishment Warns faced.

In sum, this court concludes that Warns would not have prevailed on an ineffective

---

Exh. 17, 5/28/93 RT 5.

[4]The judge asked Warns:

> THE COURT: Are there any of your constitutional, statutory or procedural rights you want me to explain further?
>
> THE DEFENDANT: No.
>
> . . .
>
> THE COURT: Other than the fact that the District Attorney has agreed to dismiss Count II with prejudice at time of sentencing, and that they would not seek more than the mid-term on Count I, which would be three years and that they would not seek more than . . . no more than the low term on the enhancement, would aggregate your sentence to a maximum of 6 years in state prison; have any other benefits or offers been made to you to induce you to plead?
>
> THE DEFENDANT: No.

Id. at 3-4.

11

1 assistance of counsel claim with regard to the El Dorado conviction. This does not end the
2 inquiry, as the court must next consider whether the Marin defense attorney was ineffective with
3 regard to his dealing with the El Dorado conviction.

### c. Strickland Analysis for the Marin Conviction

The claim of ineffective assistance of counsel for the Marin conviction based on the Marin attorney's failure to challenge the El Dorado conviction fails on both prongs of the Strickland test. Any challenge to the El Dorado conviction would have failed for the reasons discussed in the preceding section.

The claim fails on the prejudice prong. Setting aside the El Dorado conviction would have had no effect on Warns' sentence in Marin. In the Marin plea bargain, Warns admitted to three prior convictions. The Marin conviction was "strike four," so he had to have the El Dorado conviction plus another prior conviction eliminated in order to get a determinate sentence as a second-strike defendant and avoid the minimum 25-to-life sentence. There is no indication that the Marin sentencing judge would strike one of the other prior convictions, even if the El Dorado strike was eliminated. The comments by the sentencing judge and the coram nobis judge make it clear that Warns was not the kind of defendant who evoked sympathy. Warns was viewed by the Marin judges as a recidivist armed robber who fell squarely within the spirit of the Three Strikes Law. He had received breaks in the past–such as the reduced charges and shorter sentence in El Dorado–yet had not been deterred from continuing criminality. Moreover, Warns had already received a benefit in the Marin case–his plea agreement resulted in the dismissal of two of the armed robbery charges and a reduction of the maximum prison exposure. Warns was not going to get yet another break from the Marin sentencing judge, even if the El Dorado conviction had been stricken. Warns needed one prior conviction in addition to the El Dorado prior to make any difference to his Marin sentence. That was not going to happen.

The futility of challenging the El Dorado conviction also indicates the objective reasonableness of the Marin attorney's behavior. Because Warns' sentence would been same even if his attorney successfully challenged the El Dorado prior, counsel's decision not to

12

1 challenge it was reasonable.

2     In sum, there was no prejudice and it was within the range of acceptable professional 3 behavior for the Marin attorney to not challenge the El Dorado conviction where there is no 4 likelihood either that the challenge would have been successful or that, even if successful, 5 Warns' Marin sentence would have been different.

6     The Marin County Superior Court delivered a blunt but accurate assessment of the effect 7 of having the El Dorado conviction set aside:

> 8 I think it would require an awful lot of speculation and wishful thinking to believe that [Marin County sentencing] Judge Graham's sentence would have been any different in
> 9 this case, notwithstanding whatever rehabilitation may have occurred subsequently. [¶] Mr. Warns, the fact is that your record is horrible, and it's very, very scary. You are the
> 10 kind of person for whom the three strikes law was intended. You have been out committing robberies, sometimes armed, sometimes not, terrifying people and convincing
> 11 this Court that you were a danger to society.

12 Id. at 17. That court's rejection of Warns' ineffective assistance of counsel was not contrary to 13 or an unreasonable application of clearly established federal law.

14

15     3.    Failure to Accurately Advise During Plea Negotiations

16     Warns claims that his Marin attorney was ineffective for incorrectly advising him that he 17 could appeal the denial of his state habeas corpus petition regarding the El Dorado conviction. 18 Warns alleges that the ability to appeal the denial of the habeas petition was an important factor 19 in taking the Marin plea bargain. Warns' Marin attorney submitted an affidavit to the Marin 20 County Superior Court for the coram nobis hearing, in which he stated "I never advised Mr. 21 Warns that he could collaterally attack his prior conviction from El Dorado County after 22 admitting it in Marin County, as that advice would be contrary to Paragraph 4 of the change of 23 plea form." Exh. 20.

24     Even if Warns' claims are construed broadly to assert that he would have refused the plea 25 bargain and gone to trial if he had received correct advice, he cannot establish prejudice, i.e., that 26 there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and 27 would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. at 57-59. Although Warns 28 was not able to challenge his El Dorado conviction through appealing his habeas petition, he was

13

able to and did challenge it in another proceeding–the <u>coram nobis</u> hearing in Marin County Superior Court. He thus had his ineffectiveness claim considered again. The result of the Marin attorney's alleged malfeasance was not to prevent Warns from challenging his prior conviction but changing the forum in which he had to challenge it. Losing the opportunity to appeal, where the same end was achieved through another route, resulted in no prejudice.

Additionally, there is no indication that a successful challenge to the El Dorado prior would have any effect on Warns' sentence, as discussed in the preceding section. Warns also received significant benefits from his plea agreement. The district attorney dropped four counts, including two felonies and two California Penal Code § 667(a)(1) enhancements in exchange for Warns' plea of guilty to one count of robbery, and admission of three prior convictions and one California Penal Code § 667(a)(1) enhancement. Warns was sentenced to 30 years to life. Without the plea bargain, he would have been facing a sentence of up to 75 years to life. Exh 2, RT 46.

B.   <u>Failure of Appellate Counsel to Pursue Claims</u>

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. <u>See</u> <u>Evitts v. Lucey</u>, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are evaluated under the standard set out in <u>Strickland</u>, as above. <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir. 1989). Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant. <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751-54 (1983); <u>Gerlaugh v. Stewart</u>, 129 F.3d 1027, 1045 (9th Cir. 1997); <u>Miller</u>, 882 F.2d at 1434 n.10. "The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." <u>Miller</u>, 882 F.2d at 1434. <u>See also</u> <u>Jones</u>, 463 U.S. at 751-52. As the court in <u>Miller</u> explained,

> Like other mortals, appellate judges have a finite supply of time and trust; every weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court. For these reasons, a lawyer who throws in every arguable point - "just in case" - is likely to serve her client less effectively than one who concentrates solely on the strong arguments.

14

1  882 F.2d at 1434.

Warns claims that his appellate counsel was ineffective because he failed to raise the ineffective assistance of trial counsel claim, discussed in Section 2, on direct appeal. The claim is based upon Warns' trial attorney's failure to collaterally challenge the 1993 conviction. This issue was certified for appeal but was not pursued. An appeal was filed in which the appellate attorney pursued another issue. See Cal. Ct of Appeal Opinion, p. 1.

The objective reasonableness of counsel's failure to pursue this claim on appeal depends upon the merits of the claim. As discussed earlier in this order, this claim would not have succeeded. Therefore, it was not objectively unreasonable for Warns' appellate counsel to not pursue the claim. See Miller, 882 F.2d at 1434. For similar reasons, there was no prejudice. There is not a reasonable probability that, but for counsel's failure to raise the issue, Warns would have prevailed on appeal because the claim would not have succeeded on the merits. See Miller, 882 F.2d at 1434, n.9 (citing Strickland, 466 U.S. at 688, 694); United States v. Birtle, 792 F.2d 846, 849 (9th Cir. 1989).

## CONCLUSION

The petition for a writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: February 17, 2006

_____
SUSAN ILLSTON
United States District Judge